UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Covington

| | | |
|---|---|---|
| ISIDRO CALLEJA SEBASTIAN, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:25-cv-00167-SCM |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| SAMUEL OLSON, et al., | ) | **ORDER** |
| | ) | |
| Respondents. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Isidro Calleja Sebastian is a noncitizen who "entered the United States unlawfully" and has been detained without bond by the Department of Homeland Security while undergoing removal proceedings. [Dkt. 6 at 6]. He has filed a petition for a writ of habeas corpus on the ground that it is unlawful for DHS to detain him without a bond hearing. [Dkt. 1]. But he is not entitled to a bond hearing. To the contrary, the applicable statutory language provides that he "shall be detained" during removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Accordingly, his habeas petition is denied.

## I.    Facts

The Petitioner, Isidro Calleja Sebastian, is a Mexican citizen who came to the United States at some point more than 20 years ago. [Dkt. 1 at 5]. He entered the United States unlawfully without authorization or inspection. [*Id.*; Dkt. 6 at 3, 6]. On June 24, 2025, an immigration officer issued the Petitioner a Notice to Appear charging him with being an alien present in the United States without having been

admitted or paroled. [Dkt. 1-2 at 1]. An immigration judge initially granted the Petitioner bond on July 12, 2025, [Dkt. 1-3 at 1], but the Board of Immigration Appeals later determined that its decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220 (BIA 2025), meant the immigration judge "lacked authority to hear the [Petitioner]'s request" for bond and ordered the Petitioner to be detained without bond. [Dkt. 1-4 at 3].

The Petitioner then filed his Petition for a Writ of Habeas Corpus on October 21, 2025. [Dkt. 1]. The Respondents include James Daley as Jailer of the Campbell County Detention Center and Sam Olson as the Deputy Director for ICE's Chicago office. [*Id.* at 4–5]. The Petitioner argues that his detention without bond violates his right to due process under the Fifth Amendment and the plain text of the Immigration and Nationality Act. [*Id.* at 12–14]. According to the Petitioner, his detention is governed by 8 U.S.C. § 1226(a) instead of 8 U.S.C. § 1225(b)(2), meaning he is entitled to a bond hearing. [*Id.* at 11–13]. Thus, he seeks relief through a writ of habeas corpus, which "is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And he asks this Court to reject *Yajure Hurtado*'s interpretation of the INA, agree with the federal judges who have found that detention like his is unlawful, and endorse his understanding of the INA. [Dkt. 1 at 9–11]. He requests an order prohibiting the Respondents from transferring him out of the Eastern District of Kentucky and an order requiring his release from custody. [*Id.* at 15].

2

After a Response was filed, the Petitioner filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, [Dkt. 5], seeking suspension of his removal proceedings until the Court ruled on his Petition. This Court denied the Motion on December 19, 2025. [Dkt. 9].

## II. Analysis

This case boils down to one question: Is the Petitioner's detention governed by 8 U.S.C. § 1225(b)(2), which would preclude him from receiving a bond hearing, or is it governed by 8 U.S.C. § 1226(a), which would allow a bond hearing?

This question has arisen in numerous cases nationwide due to the BIA's determination in 2025 that all aliens who have not been admitted into the country must be detained without bond "unless an immigration officer determines that they are 'clearly and beyond a doubt entitled to be admitted.'" *Yajure Hurtado*, 29 I. & N. Dec. at 228 (quoting 8 U.S.C. § 1225(b)(2)(A)). Following that decision, DHS began detaining aliens situated similarly to the Petitioner without bond hearings. This signaled a shift in practice. Previously, aliens who were present in the United States without admission and who were apprehended within the United States generally were given a bond hearing pursuant to 8 U.S.C. § 1226(a). The Petitioner received such a hearing on July 12, 2025, and was granted bond. [Dkt. 1-3 at 1]. But now, during the course of the Petitioner's present detention, the BIA's more recent interpretation of the INA in *Yajure Hurtado* resulted in vacatur of his bond and prevented him from receiving another bond hearing. As explained above, the

Petitioner argues that his detention without bond is unlawful.  He believes the prior agency practice reflects the correct interpretation of the INA.

Pointing to *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Petitioner argues that this Court should not defer to the new interpretations of the BIA and DHS.  [Dkt. 6 at 3].  Fair enough.  The Petitioner is correct that agency deference is a thing of the past.  *See Loper Bright*, 603 U.S. at 392.  But that just means the Court must exercise independent judgment in saying what the law is.  *See id.* at 385 (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)).  It does not mean that the Court is obligated to conclude that the BIA and DHS are wrong and the Petitioner is right.  To the contrary, the Petitioner is the one who is wrong.  A straightforward application of the plain language of the relevant statute compels the conclusion that he must be detained during his removal proceedings.  Thus, he is not entitled to a bond hearing.  *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *see also Hernandez Gomez v. Daley*, No. 2:25-cv-00150-SCM, 2026 WL 252496 (E.D. Ky. Jan. 30, 2026).

## A. Section 1225(b)(2) applies to the Petitioner, thereby making him subject to mandatory detention.

The two statutes that potentially govern the Petitioner's detention are 8 U.S.C. § 1225(b)(2) and 8 U.S.C. § 1226(a).  In relevant part, § 1225(b)(2)(A) provides:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

And § 1226(a), in relevant part, provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> > (1)    may continue to detain the arrested alien; and
> >
> > (2)    may release the alien on—
> >
> > > (A)    bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > >
> > > (B)    conditional parole . . . .

The scope of the two statutes is obviously different. Section 1226(a) potentially applies to any alien who is arrested on a warrant issued for removal proceedings. Section 1225(b)(2), however, is narrower. It applies to a smaller subset of aliens who are "applicant[s] for admission." *Id.* § 1225(b)(2). Thus, the key here is determining whether the Petitioner is an "applicant for admission." If so, his detention is governed by § 1225(b)(2). If not, it is governed by § 1226(a), which would allow for a bond hearing.

The term "applicant for admission" is a term of art. It is not limited solely to those aliens who have literally submitted an application for admission. Rather, § 1225(a)(1) specifies that:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

5

And the term "admitted" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). So an "applicant for admission" is any alien who is either literally applying for admission or else is present in the United States without having received permission to be here.

In this case, the Petitioner concedes that he falls within the latter group, [Dkt. 6 at 6 (noting the Petitioner is a "noncitizen[] with no status" and "entered the United States unlawfully")], so he is unquestionably deemed an "applicant for admission" under § 1225(a)(1). This point is dispositive. Because he is an "applicant for admission," § 1225(b)(2)(A) requires that he "shall be detained" during his removal proceedings if an immigration officer determines that he is "not clearly and beyond a doubt entitled to be admitted." And the record makes clear that this has happened here. Under the INA, an immigration officer is "any employee or class of employees of the [INS] or of the United States designated by the Attorney General . . . to perform the functions of an immigration officer." 8 U.S.C. § 1101(a)(18); *see also Montoya Cabanas v. Bondi*, No. 4:25-cv-04830, 2025 WL 3171331, at *7 (S.D. Tex. Nov. 13, 2025). Here, an immigration officer examined the Petitioner's case and issued him a Notice to Appear charging him with removability, which necessarily means that the officer determined the Petitioner is not clearly and beyond a doubt entitled to be admitted.[1] [Dkt. 1-2 at 1]; *see also Singh v. Noem*, No. Civ 25-1110 JB/KK, 2026 WL

---

[1] If an immigration officer had determined that the Petitioner was clearly and beyond a doubt entitled to be admitted to the United States, then he would have been admitted and the Notice to Appear would not have been issued to commence a removal proceeding.

146005, at *35 (D.N.M. Jan. 20, 2026) (holding that the facts of the case showed that an immigration officer had determined that the petitioner was not clearly and beyond a doubt entitled to be admitted).

Thus far, only one circuit court of appeals—the Fifth Circuit—has issued a decision on the merits of the question at issue here,[2] and it reached the same conclusion that this Court has reached.  In *Buenrostro-Mendez v. Bondi*, the Fifth Circuit held that aliens situated like the Petitioner are "deemed, by statute, to be applicants for admission pending the resolution of removal proceedings," so § 1225(b)(2)(A) applies to them.  166 F.4th at 502.  In turn, "Section 1225(b)(2) does not include any exception that permits the government to release detained aliens on bond." *Id.* at 499.  In short, the Fifth Circuit, the first court of appeals to definitively address this issue, concluded that "the government's position is correct."  *Id.* at 498.

---

[2] The Seventh Circuit has addressed the issue, but not in a merits decision.  The Seventh Circuit's decision in *Castanon-Nava v. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025), was a motions panel decision that reached "preliminary" conclusions "based on the limited record" then before that court. *Id.* at 1064.  The Seventh Circuit motions panel expressly noted that the court would later "address the appeal on the merits" after a chance for "more fulsome arguments and a more comprehensive record." *Id.*  The Seventh Circuit has itself acknowledged that motions panel decisions "are summary in character, made often on a scanty record, and not entitled to the weight of a decision made after plenary submission." *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991).  Its *Castanon-Nava* decision is thus "not binding precedent" on district courts within that circuit, let alone on this Court. *Espinoza Hernandez v. Olson*, No. 25-cv-1670-bhl, 2026 WL 161509, at *6 (E.D. Wis. Jan. 21, 2026).  And even if *Castanon-Nava* were a decision of a *Sixth Circuit* motions panel, it is far from clear that it would be binding beyond being law-of-the-case:  The Sixth Circuit recently noted that it has "never explained the amount of deference due" to a motions panel decision and highlighted that "other circuits do not defer to similar interlocutory rulings." *Kentucky v. EPA*, 123 F.4th 447, 457–58 (6th Cir. 2024).

7

For these reasons, § 1225(b)(2)(A) requires that the Petitioner be subject to mandatory detention. The plain language of the statute permits no other conclusion. *Id.* at 502 ("The text and context of § 1225 contradict the petitioners' reading of the statute."). Nevertheless, the Petitioner resists this straightforward application of the statute on several grounds, each of which is unavailing.[3]

### 1. Mandatory detention under § 1225(b)(2)(A) is not limited to "arriving" aliens.

The Petitioner claims that § 1225(b) applies only to aliens who are "arriving" in the United States, not those who have been here for years, as he has. [Dkt. 1 at 12]. This argument is belied by the plain language of § 1225. To be sure, § 1225(b)(1) applies to aliens who are "arriving" in the United States for the first time. *See* 8 U.S.C. § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible . . ., the officer shall order the alien removed from the United States . . . ."). But § 1225(b)(2)(A) is the section that requires

---

[3] The Petitioner relies on *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), at a couple points in his briefing. But *Jennings* addressed a very different question from the one at issue here. True, *Jennings* touched on § 1225(b) and § 1226, suggesting the latter authorizes detention of "certain aliens already in the country." *Id.* at 289. But *Jennings* was about whether certain provisions of the INA could be read to establish "a statutory right to periodic bond hearings" for individuals detained under those provisions. *Id.* at 286. *Jennings* did not address—much less authoritatively dispose of—the question at issue in this case, which is whether the Petitioner's detention is governed by § 1225(b)(2)(A) or § 1226(a). In fact, the underlying petitioner in *Jennings* was a lawful permanent resident—that is, he had already been lawfully "admitted" to the United States; he was not "an applicant for admission." *Id.* at 289. The Petitioner here, by contrast, has not been admitted within the meaning of the statute. Thus, the Petitioner's reliance on *Jennings* is misplaced. If anything, *Jennings* is more helpful to the Government's argument than the Petitioner's. *See Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL 3628229, at *9–*10 (S.D. Ohio Dec. 15, 2025).

the Petitioner to be detained.  And nothing in § 1225(b)(2)(A) limits its applicability to "arriving" aliens.  In fact, the word "arriving" does not even appear in § 1225(b)(2)(A).  As other courts have recognized, § 1225(b)(1) applies to "arriving aliens," but § 1225(b)(2) is a "catchall" provision that applies to all other aliens who have not been granted admission to the country.  *See Mejia Olalde v. Noem*, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025) (quoting *Jennings*, 583 U.S. at 287).  The Petitioner falls within the latter group, so § 1225(b)(2) applies to him.  *See Buenrostro-Mendez*, 166 F.4th at 502 ("Presence without admission deems the petitioners to be applicants for admission" and therefore subject to § 1225(b)(2).).

Nevertheless, the Petitioner points to the fact that § 1225 carries the following title:  "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  He contends that the presence of the word "arriving" in the title means that § 1225 can apply only to those aliens who are arriving, not those who are already present in the country.  [Dkt. 6 at 2].  Not so.

It is true that the title of a statutory section can be a tool "'for the resolution of a doubt' about the meaning of a statute."  *Dubin v. United States*, 599 U.S. 110, 121 (2023) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)); *see also* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 221–24 (2012) (explaining the appropriate role of titles in determining the meaning of statutes).  But here there is no doubt to be resolved.  The meaning of § 1225's text is plain.  And in no case can a title "undo or limit that which the text makes plain."

9

*Bhd. of R.R. Trainmen v. Balt. & Ohio R.R.*, 331 U.S. 519, 529 (1947); *see also* Scalia & Garner, *supra*, at 222 ("[A] title or heading should never be allowed to override the plain words of a text.").

Moreover, even if the title or subsection headings were relevant—which they are not in light of the fact that there is no ambiguity in the statute—they would *disprove* the Petitioner's argument. After all, the heading for § 1225(b)(1) indicates that it applies to the "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," while the heading for § 1225(b)(2) indicates that it applies to the "Inspection of *other aliens*." (emphasis added). Thus, the headings for § 1225(b)(1) and (b)(2) indicate that the former applies to arriving aliens (and a narrow category of other aliens who can be treated as arriving aliens), while the latter applies to "other aliens," which would include the Petitioner here.

### 2. The Petitioner is "seeking admission."

Next, seizing on the language in the second clause of § 1225(b)(2)(A), the Petitioner contends that mandatory detention under § 1225(b)(2)(A) cannot apply to him because he is not "seeking admission." [Dkt. 6 at 3]. In other words, the Petitioner argues that § 1225(b)(2)(A) does not apply to all aliens who are "applicant[s] for admission," but instead applies only to those aliens who are "applicant[s] for admission" *and* who are also "seeking admission." His argument, however, misreads the statutory text. And it is nonsensical. The "seeking admission" language is not additional limiting language. It does not further narrow the class of

10

aliens to whom § 1225(b)(2)(A) applies beyond those who are "applicant[s] for admission." *See Buenrostro-Mendez*, 166 F.4th at 502 ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'").

The Petitioner's argument would be compelling if the statutory language said that § 1225(b)(2)(A) applies "in the case of an alien who is an applicant for admission *and who is also seeking admission.*" But the statute says nothing of the sort. Instead, it simply says that the statute applies "in the case of an alien who is an applicant for admission," 8 U.S.C. § 1225(b)(2)(A), which the Petitioner plainly is.

Similarly, the Petitioner's argument would be compelling if the statutory text said that detention is mandatory "if the examining immigration officer determines that an alien *is* seeking admission *and also* is not clearly and beyond a doubt entitled to be admitted." But, again, the statute says nothing of the sort. The statute does not require the immigration officer to make *both* a determination that the alien in question is seeking admission *and* a determination that the alien is not clearly and beyond a doubt entitled to be admitted. Instead, it requires only a determination that the alien "is not clearly and beyond a doubt entitled to be admitted." *Id.* § 1225(b)(2)(A). The placement of the word "is" clearly demonstrates that the determination being made by the immigration officer concerns nothing more than the alien's entitlement to be admitted. Thus, the phrase "seeking admission" does not pertain to any element that must be found by the immigration officer before mandatory detention applies.

Rather than interpreting the "seeking admission" language as a separate requirement that must be met for § 1225(b)(2)(A) to apply, the more natural and logical reading is to view it as an appositive for the "applicant for admission" language. That is, the phrase "alien seeking admission" is simply another way of identifying the "alien who is an applicant for admission." *See Coronado*, 2025 WL 3628229, at *8 ("[T]he Court concludes that the more natural reading is that the phrase 'alien seeking admission' is just another way of saying 'alien who is an applicant for admission.'"). This is the most rational interpretation not only because—as explained above—the statutory text contains no language establishing those two clauses as independent requirements, but also because it makes no sense to think of an "applicant for admission" as anyone other than a person who is "seeking admission." What else would an applicant for admission be doing if not seeking admission? After all, "[t]o 'seek' is a synonym of to 'apply' for." *Mejia Olalde*, 2025 WL 3131942, at *3. Thus, one who is an "applicant for admission" is, by definition, "seeking admission." *See Buenrostro-Mendez*, 166 F.4th at 503 ("[A]n 'applicant for admission' is necessarily someone who is 'seeking admission.'"). This means that because the Petitioner is deemed to be an "applicant for admission," he is likewise deemed to be "seeking admission."

Consider also the implications of the Petitioner's argument. If he is correct, then that means aliens who are present in the country without permission will be treated more favorably if they decline to take any measures to obtain permission than if they actively seek out permission to remain here. Those who refuse to do anything

that would constitute "seeking admission" in the Petitioner's view would not be subject to mandatory detention, while those who do seek permission to stay in the United States would be subject to mandatory detention. That makes no sense. *See id.* at 508 ("It seems strange to suggest that Congress would have preserved bond hearings exclusively for unlawful entrants."). Rather, finding that the Petitioner falls within § 1225(b)(2) is more consistent with the plain text of the statute and the goals of the INA.

### 3. Applying § 1225(b)(2)(A)'s mandatory-detention provision to the Petitioner does not render § 1226(c) or the recent Laken Riley Act superfluous.

The Petitioner contends that the Court's interpretation of § 1225(b)(2)(A) renders 8 U.S.C. § 1226(c) and the recent Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), superfluous. This argument is also incorrect.

Section 1226(c) requires detention for noncitizens who have committed certain crimes or who have been involved in terrorist activities. The Laken Riley Act amended § 1226(c) in 2025 by adding new categories of criminal noncitizens to § 1226(c)'s detention provisions. Specifically, the Laken Riley Act amends § 1226(c) to require detention by the federal government (the "Government") for aliens who are present in the country without having been admitted and who have committed certain state crimes. § 2, 139 Stat. at 3. The Petitioner claims that § 1226(a) and § 1226(c) together prove his case. He points out that § 1226(a) states that aliens who fall under § 1226(c) are not eligible to be released on bond. Thus, according to the Petitioner, the import of § 1226(c)—and its amendment by the Laken Riley Act—is to subject certain unadmitted aliens to mandatory detention without bond. This

13

means—in his view—that unadmitted aliens were not already subject to mandatory detention under § 1225(b)(2)(A). Otherwise, according to the Petitioner, there would be no point to § 1226(c)—or the Laken Riley Act, for that matter—because the unadmitted aliens who fall within its provisions would have already been subject to mandatory detention. In the Petitioner's view, then, § 1226(c) cannot be given independent meaning unless the unadmitted aliens to whom it applies were not already subject to mandatory detention under § 1225(b)(2)(A). The Petitioner's view, however, represents a fundamental misunderstanding of § 1226(c) and the Laken Riley Act.

The critical point as to § 1226(c)—and the portion of the Laken Riley Act that amends it—is that it does not merely require detention. Instead, it requires detention immediately upon a covered alien's release from custody on the underlying offense. *See* 8 U.S.C. § 1226(c)(1); *see also* § 2, 139 Stat. at 3. Specifically, § 1226(c)(1) provides that "[t]he Attorney General shall take into custody" a covered alien "*when* the alien is released . . . ." (emphasis added). Thus, it contains a temporal component that is missing from § 1225(b)(2)(A). Stated differently, § 1226(c) and the Laken Riley Act do not mandate the detention of aliens who otherwise would *not* be subject to mandatory detention, but instead they mandate the *timing* of the detention of certain aliens. They specify *when* certain aliens are to be detained, not merely that they must be detained. In this respect, § 1226(c) and the Laken Riley Act "add[] something that Section 1225(b)(2)(A) lacks." *Gomez Hernandez v. Lyons*, No. 1:25-CV-216-H, 2026 WL 31775, at *7 (N.D. Tex. Jan. 6, 2026); *see also Coronado*, 2025 WL 3628229, at

14

*11 (explaining the different obligations imposed by § 1226(c) and § 1225(b)(2)). Thus, properly understood, § 1226(c) and the Laken Riley Act are about the *timing* of detention. *See Coronado*, 2025 WL 3628229 at *11 ("While admittedly overlapping in some sense, the two provisions impose different obligations as to initiating custody, and thus this reading of § 1226(c) does not render § 1225(b)(2) surplusage."); *see also Gomez Hernandez*, 2026 WL 31775, at *7 (The Laken Riley Act "regulates when the Attorney General must take aliens into custody" and provides "a temporal gloss on the Executive's detention authority" in light of the fact that § 1225(b)(2) "does not include a timeline.").

The following hypothetical illustrates this point: Jane Doe is an alien who entered the country without permission, and while she is in the country, she is convicted of a burglary, which is one of the predicate offenses for application of the Laken Riley Act. 8 U.S.C. § 1226(c)(1)(E)(ii). Before the Laken Riley Act, she could have simply been released from custody after serving her sentence for the burglary; such was the practice at the time. *See Coronado*, 2025 WL 3628229, at *11. The correct interpretation of § 1225(b)(2)(A) would have required Doe to be detained if and when removal proceedings were initiated against her, but nothing would have prevented her from being released from state custody after serving her time for the burglary. After the Laken Riley Act, however, it is now mandatory that she be taken into custody by federal authorities "when [she] is released" from detention on the burglary. 8 U.S.C. § 1226(c)(1). Thus, the Laken Riley Act simply filled in a gap that previously allowed removable aliens to be released from state or local custody and go

back to living amongst the country's general population after having committed certain crimes. Now, in the wake of that Act, aliens like the hypothetical Jane Doe must go straight into federal custody after being released from state or local custody. This has nothing to do with the mandatory-detention provision under § 1225(b)(2)(A), much less is it pointlessly redundant of that provision. In short, this all means that the Laken Riley Act can be given independent meaning and that the Court's interpretation of § 1225(b)(2)(A) does not render them superfluous.

But even if § 1225(b)(2)(A) and § 1226(c) are in some sense overlapping, the canon against superfluity—like all canons of interpretation—is a guide, not an inexorable command. *See Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Redundancy is not a silver bullet."). It is true that the canon against superfluity "applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times," *Bilski v. Kappos*, 561 U.S. 594, 608 (2010), but it is "weak when applied to acts of Congress enacted at widely separated times," as is the case here. *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 373 (3d Cir. 1999); *see also Coronado*, 2025 WL 3628229, at *11 (noting the nearly 30-year gap between enactment of § 1225(b)(2) and the Laken Riley Act). And even when statutory provisions *could* be redundant, "[s]ometimes the better overall reading of the statute contains some redundancy." *Rimini St.*, 586 U.S. at 346. Such is the case here to the extent there is any redundancy. After all, nothing prevents

16

Congress from "employ[ing] a belt and suspenders approach."[4] *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020).

### 4. The novelty of the Government's interpretation and enforcement of § 1225(b)(2)(A) does not make it incorrect.

Finally, a common theme running throughout the Petitioner's arguments is the suggestion that the Government's interpretation of § 1225(b)(2)(A) cannot be correct because the law has never been enforced that way before. [Dkt. 1 at 2]. It might be true that the Government has not previously interpreted and enforced §§ 1225 and 1226 the way it does now, but that does not mean the Government is wrong. To the contrary, it appears that the Government previously interpreted and enforced the law incorrectly, and it has now corrected its prior mistakes.

The Petitioner seems to suggest that the Government should be bound by its prior interpretation, or that an agency can effectively re-write a statute by enforcing it contrary to its plain language for a long time, much the way one can adversely possess property simply by acting as the owner for a long time. But that is not how things work. Estoppel generally does not apply to the Government when it comes to law enforcement. *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60–61 (1984) ("[I]t is well settled that the Government may not be estopped on

---

[4] In this vein, the Fifth Circuit noted that Congress passed the Laken Riley Act "at a time when the Executive was still declining to exercise its full enforcement authority under the INA," and so "the Act did have a substantial effect when passed insofar as it required the detention without bond or parole of certain aliens the administration was then *treating* as bond-eligible." *Buenrostro-Mendez*, 166 F.4th at 505 (emphasis added). Even if the Laken Riley Act created some redundancy, when viewed in context, it served to reaffirm—not limit—Congress's earlier command that certain aliens must be detained without bond.

the same terms as any other litigant" because public policy considerations let the Government alter its positions in ways private parties cannot.); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (The Government may change its interpretation of a statute when "the new policy is permissible under the statute," "there are good reasons for it," and "the agency *believes* it to be better."). And an agency cannot adversely possess the text of a statute. The Court's job is to interpret and apply the law as it was *written by Congress*, not as it was historically interpreted and enforced by agencies. Thus, while it might be factually true that the BIA and DHS have not previously interpreted the law as they do now, that point is legally irrelevant.

### B. Federal regulations cannot supplant the plain text of a statute.

The Petitioner further argues that his detention violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19—regulations governing how the executive branch undertakes apprehension, custody, bond, and detention under the INA. [Dkt. 1 at 13]. In support of this argument, the Petitioner points to statements in the Federal Register from 1997. [*Id.*]. There, DHS's predecessor agency and the Executive Office for Immigration Review declared, in the course of explaining a series of regulatory changes after the Illegal Immigration Reform and Immigration Responsibility Act was passed, that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). This, he says, means that noncitizens situated like him should

be understood as eligible for bond—despite the complete lack of legal authority for the agencies' 1997 interpretation of the statute.  [Dkt. 1 at 13].

The problem for the Petitioner's argument is that a regulation cannot contravene the plain text of a statute.  *See Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980) (an agency's interpretation of a statute "cannot supersede the language chosen by Congress," and so "any suggestion that the [agency] may adopt regulations that are inconsistent with the statutory mandate" must be rejected); *see also McGowan v. United States*, 143 F.4th 686, 705 (6th Cir. 2025) ("[R]egulations cannot amend a statute" or "add[ ] to the statute ... something which is not there." (citations omitted)).  Whatever influence the agencies' interpretation might have had when it was promulgated in 1997, *Chevron* deference to agency interpretations of statutes is now a thing of the past.  *Loper Bright*, 603 U.S. at 412–13.  In the wake of *Loper Bright*, courts must instead "apply the plain meaning" of the relevant statute "over any contradictory reading ostensibly set forth by" the agency.  *McGowan*, 143 F.4th at 705.  And because this Court already explained that the plain meaning of § 1225(b)(2) mandates detention for noncitizens like the Petitioner, the regulations he points to can offer him no support.

### C. The Petitioner's detention does not violate due process.

The Petitioner also contends that his detention violates his right to due process under the Fifth Amendment to the United States Constitution.  It is true that noncitizens like the Petitioner have due process rights even though they are present in the country without ever having been admitted.  *Zadvydas v. Davis*, 533 U.S. 678,

693 (2001). However, their right to due process goes no further than the process Congress has chosen to give them. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020). Here, the Petitioner is receiving that process. Thus, he has no valid claim under the Fifth Amendment.

## III. Conclusion

District Courts within this Circuit—and all over the nation—are wrestling with issues like those the Petitioner has raised. Indeed, another case in this District arrived at a different outcome after thorough analysis of a similar petition. *See Moyao Roman v. Olson*, No. 2:25-cv-169-DLB-CJS, 2025 WL 3268403 (E.D. Ky. Nov. 24, 2025). While this Court appreciates the thoughtful and thorough analyses of the courts that have reached the opposite conclusion, it agrees with those that have been convinced that § 1225(b)(2)(A) compels mandatory detention for those noncitizens who are in the Petitioner's position, including the Fifth Circuit. *See, e.g., Buenrostro-Mendez*, 166 F.4th 494; *Singh*, 2026 WL 416005; *Gomez Hernandez*, 2026 WL 31775; *Coronado*, 2025 WL 3628229; *P.B. v. Bergami*, No. 3:25-CV-2978-O, 2025 WL 3632752 (N.D. Tex. Dec. 13, 2025); *Montoya Cabanas*, 2025 WL 3171331; *Altamirano Ramos v. Lyons*, No. 2:25-cv-09785-SVW-AJR, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025); *Mejia Olalde*, 2025 WL 3131942.[5]

---

[5] Many other district courts concur in well-reasoned opinions. *See, e.g.*, *Rodriguez v. Noem*, No. 9:25-CV-320, 2025 WL 3639440 (E.D. Tex. Dec. 10, 2025); *Sandoval v. Acuna*, No. 6:25-CV-1467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025).

For the foregoing reasons, it is hereby **ORDERED** that Petitioner Calleja Sebastian's Petition for a Writ of Habeas Corpus, [Dkt. 1], is **DENIED**, and his Petition will be **DISMISSED WITH PREJUDICE**.  Petitioner Calleja Sebastian's Motion to Expedite, [Dkt. 8], is **DENIED** as moot.[6]  A separate Judgment will be entered.

Signed this 10th day of March, 2026.



S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky

---

[6] The Court previously denied the Petitioner's Motion to Expedite as moot insofar as it related to the Petitioner's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.  [Dkt. 9].